UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORNELIUS SINGLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-2413 (EGS) |
| | ) |
| EXECUTIVE OFFICE OF THE | ) |
| UNITED STATES ATTORNEYS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF ANTHONY J. CICCONE

I, Anthony J. Ciccone, declare the following to be a true and correct statement of facts material to this case:

1. I am a Senior Attorney Advisor in the Department of Justice currently assigned to the Executive Office for United States Attorneys ("EOUSA"), Freedom of Information and Privacy Staff. I have previously served within the Department as a Trial Attorney in the Civil Division (1990-97) and as Trial Attorney/FOIA-Privacy Counsel in the Executive Office for United States Trustees (1997-2004).

2. The FOIA/Privacy Staff processes all requests received by EOUSA and by all United States Attorneys' Offices nationwide – which last year exceeded 3,500 separately tracked request numbers – under the Freedom of Information and Privacy Acts ("FOIA/PA") and related regulations. 5 U.S.C. §§ 552-552a; 28 CFR § 16.1, *et seq.*

3. My duties on the FOIA/Privacy Staff include acting as liaison with other Departmental components and overseeing the processing of FOIA/PA requests for records maintained by

EOUSA or any of the United States Attorneys' Offices nationwide, including searches for responsive records, associated processing and fee issues, and determinations regarding release, redaction, or withholding of agency records pursuant to the access and exemption provisions of the Freedom of Information and Privacy Acts.

4. I am personally familiar with the FOIA/PA requests made by Mr. Cornelius Singleton (hereafter "Requester" or "Plaintiff"), which form the basis of this litigation. The statements I make in this declaration derive from my direct review of Departmental files, information acquired in the performance of my official duties, and my own personal knowledge.

## OVERVIEW

5. This declaration explains the procedures that were followed in responding to Plaintiff's October 26, 2005 request ("the request"), which is referenced in paragraph 5 of the complaint dated November 29, 2005 and filed December 15, 2005. For ease of reference, the final page of this declaration contains an index of accompanying exhibits.

6. The request sought the "letters of appointment and oath of office" for 13 individually named current and/or former Assistant United States Attorneys ("AUSAs" or "prosecutors") in four different United States Attorneys' Offices ("USAOs"). *See* **Exhibits 1, 9, 16, and 23**.

7. A standard form, known as an "Appointment Affidavit," is routinely executed by AUSAs to reflect their official government appointment and to attest to their oath of office.[1]

---

[1] *See* Standard Form 61, "Appointment Affidavits," showing position to which appointed and date of appointment; *accord* ¶ A ("Oath of Office: I will support and defend the Constitution of the United States against all enemies . . ."); *reproduced at www.opm.gov/forms/pdf_fill/SF61.pdf.*

8. Because the Requester sought records from four different USAOs, his request was split by EOUSA into the following four Request Numbers for search purposes by each of the four identified USAOs:

> 06-174: USAO-FLS (Southern District of Florida);
> 06-175: USAO-NCW (Western District of North Carolina);
> 06-176: USAO-DC (District of Columbia); and
> 06-177: USAO-TNM (Middle District of Tennessee).

**Exhibits 1, 9, 16, and 23**. Plaintiff's request was directed to these four offices because United States Attorneys' case files and other records are generally decentralized among over 100 United States Attorneys' Offices located throughout the 94 federal judicial Districts, and the four above-referenced USAOs were specifically identified by the Requester here.

9. All four USAOs have now conducted not just one, but two searches, and the request has been fully processed and closed by the FOIA/Privacy Staff, which is the authorized point-of-contact for responding to FOIA/PA requests concerning all EOUSA components and United States Attorneys' Offices.

10. Contrary to Plaintiff's allegation "that the requested records may be withheld under Exemption 4" (Complaint ¶ 6), FOIA Exemption 4 has not been invoked. Rather, EOUSA has released the current Appointment Affidavit – containing the standard "oath of office" – for each named prosecutor, in full and without redaction, to the extent such records could be located by the four named USAOs, which are the offices most likely to possess responsive records regarding the 13 identified AUSAs. _See_ **Exhibits 4, 12, 19, and 26** (March 15, 2006 initial release).

11. Further, in response to a follow-up inquiry by the Requester, the four USAOs conducted a supplemental search, and EOUSA then furnished the Requester with "letters of

appointment" – in addition to the previously furnished Appointment Affidavits (even though the Standard Form 61 reflects both the AUSA's appointment *and* oath of office) – insofar as each USAO could locate documents responsive to Plaintiff's request for "letters of authority," and subject to the redaction of individual AUSAs' home addresses pursuant to FOIA Exemption 6 and the Privacy Act, 5 U.S.C. §§ 552(b)(6) and 552a(b), as more fully described below. *See* **Exhibits 8, 15, 22, and 29** (April 26, 2006 supplemental release).[2]

## REQUEST NO. 06-174 (USAO-FLS)

12. Plaintiff's October 26, 2005 request was received by EOUSA on November 8, 2005, and designated Request No. 06-174 for search and processing purposes by the United States Attorney's Office for the Southern District of Florida (USAO-FLS) with respect to Plaintiff's request for "letters of appointment and oath of office" on seven prosecutors in that USAO. **Exhibit 1**.

13. After 20 working days had elapsed without a response from EOUSA, the Requester instituted this FOIA action by complaint dated November 29, 2005 and filed December 15, 2005.

14. Shortly after receiving a copy of the Requester's complaint, I issued a memorandum dated February 7, 2006 advising the USAO-FLS of the litigation and requesting it to "[e]xpedite [its] production of responsive documents." **Exhibit 2**.

15. In response to the request, a Human Resources Assistant in the USAO-FLS conducted a search for the identified AUSAs in the District's personnel files, as reflected on FOIA

---

[2] For ease of reference, the remaining portions of this declaration may be found at the following locations: Request No. 06-174 (¶¶ 12-26); Request No. 06-175 (¶¶ 27-41); Request No. 06-176 (¶¶ 42-56); Request No. 06-177 (¶¶ 57-70); Adequacy of Search (¶¶ 71-80); Disclosure Determination (¶¶ 81-82); FOIA Exemption 6 (¶¶ 83-86); Privacy Act (¶¶ 87-89); Segregability (¶¶ 90-92); Conclusion (¶ 93); Index of Exhibits (page 23).

Form Nos. 010B, 036 and 041. **Exhibit 3**. Those forms reflect that all appropriate procedures were followed, and that the USAO conducted a reasonable search for responsive records by means of a manual search of the District's personnel records.

16. Upon EOUSA's receipt of records and the above-referenced forms from the USAO-FLS, a paralegal specialist in our FOIA/Privacy Staff was assigned to review the District's proposed response to the request for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

17. After personally reviewing both the District's proposed response and the paralegal specialist's analysis, I issued a letter dated March 15, 2006 forwarding the named prosecutors' current Appointment Affidavits to the Requester, in full and without redaction, to the extent that such responsive records had been forwarded to EOUSA by the USAO. **Exhibit 4**.

18. More specifically, of the seven AUSAs for which the Requester sought records from the USAO-FLS, four current Appointment Affidavits were released-in-full for AUSAs Maria J. Beguiristain, William H. Bryan, III, Roger H. Stefin (whose name was misspelled "Steffin" in the request), and William C. White. **Exhibit 4**. No redactions were made and no exemptions were asserted as to these four pages of documents.

19. As for the other three AUSAs for which the Requester sought records from the USAO-FLS, my March 15, 2006 letter advised the Requester that no responsive USAO records could be located  because "AUSAs Capone, Brown, and Rosado  are no longer with the USAO-FLS, although you may be able to obtain such records directly from the Federal Records Center . . . ." *Id*.

20. By facsimile dated April 5, 2006, I received a copy of the Requester's March 22, 2006 response to EOUSA's March 15, 2006 records release. **Exhibit 5**. The Requester took issue with the lack of "letters of appointment" in the March 15th release, stating, in pertinent part, as follows:

> On or about March 20, 2006, I received from [EOUSA] the Appointment Affidavits of the respective AUSA's attorneys I had requested and is the subject of the above styled matter. I discern from the disclosure . . . that you will be representing to the court that full disclosure ha[s] been made. I trust and hope that you will not represent such false representation to the court. This is so, because, said agency ha[s] utterly failed to provide the respective letters of appointment detailing the tenure of the position or any extension that may have been granted over the tenure period.

21. To respond to Plaintiff's concerns, and in an effort to minimize the pending issues, I issued another memorandum to the District, dated April 7, 2006, requesting it to conduct a supplemental search, on an expedited basis, for any responsive "letters of appointment" – notwithstanding that the previously released Appointment Affidavits reflect both the AUSA's appointment and oath of office. **Exhibit 6**.

22. The USAO-FLS then conducted a supplemental search for "letters of authority" on or about April 11, 2006, during which the District's FOIA Contact (an Assistant United States Attorney) and a Human Resources Specialist conducted manual searches of District personnel files for the requested records, as reflected in FOIA Forms 036 and 041, which were forwarded to EOUSA for processing. **Exhibit 7**.

23. Upon EOUSA's receipt of the District material responsive to Plaintiff's request for "letters of authority," I personally reviewed it for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

24. I then issued a letter to the Requester, dated April 26, 2006, releasing the "letters of

appointment" that had been located by the District – subject to redaction of the affected AUSAs'

home addresses – pursuant to FOIA Exemption 6 and the Privacy Act, 5 U.S.C. §§ 552(b)(6) and

552a(b). In pertinent part, my April 26, 2006 letter stated as follows:

> This is a supplemental response to your above-referenced request.
> . . . After a prior search . . . , we previously released to you the
> available current oath(s) of office for the above-referenced
> Assistant United States Attorney(s) [*i.e.,* the SF-61 Appointment
> Affidavit]. . . . We understand that, by letter dated March 22,
> 2006, you subsequently advised counsel in *Singleton v. EOUSA*,
> Civil Action No. 05-2413 (D.D.C.), that you consider our prior
> release insufficient, because it did not include "letters of appoint-
> ment" in addition to oaths of office. Although we typically deem
> oaths of office more probative of AUSAs' authority than "letters of
> appointment" – which may, for example, be conditional upon
> successful drug testing and background investigation requirements
> – we asked the above-referenced USAO to conduct a supplemental
> search for the "letters of appointment" that you seek.

**Exhibit 8**, page 1.

25. More specifically, EOUSA's April 26, 2006 supplemental release consisted of ten

additional pages, of which eight pages were released in full, and two pages were redacted in part

to protect the privacy of the home address of the affected AUSAs. The records released in full

consisted of letters to the United States Attorney from Main Justice confirming the appointment

of the affected AUSA. The redacted records, in contrast, consisted of letters from Main Justice

directly to two AUSA candidates' home addresses confirming a conditional appointment subject,

*e.g.*, to a successful background investigation and drug screening test.

26. As more fully discussed below, all records were the product of a reasonable search,

all asserted exemptions were carefully evaluated and applied, and all redacted records were

thoroughly reviewed for segregability and released to the maximum extent consistent with the applicable exemptions authorized by law. No processing fees were charged.

## REQUEST NO. 06-175 (USAO-NCW)

27. Plaintiff's October 26, 2005 request was received by EOUSA on November 8, 2005, and designated Request No. 06-175 for search and processing purposes by the United States Attorney's Office for the Western District of North Carolina (USAO-NCW) with respect to Plaintiff's request for "letters of appointment and oath of office" on three prosecutors in that USAO. **Exhibit 9**.

28. After 20 working days had elapsed without a response from EOUSA, the Requester instituted this FOIA action by complaint dated November 29, 2005 and filed December 15, 2005.

29. Shortly after receiving a copy of the Requester's complaint, I issued a memorandum dated February 7, 2006 advising the USAO-NCW of the litigation and requesting it to "[e]xpedite [its] production of responsive documents." **Exhibit 10**.

30. In response to the request, a Human Resources Officer in the USAO-NCW conducted a search for the identified AUSAs in the District's personnel files, as reflected on FOIA Form Nos. 010B, 036 and 041. **Exhibit 11**. Those forms reflect that all appropriate procedures were followed, and that the USAO conducted a reasonable search for responsive records by means of a manual search of the District's personnel records.

31. Upon EOUSA's receipt of records and the above-referenced forms from the USAO-NCW, a paralegal specialist in our FOIA/Privacy Staff was assigned to review the District's proposed response to the request for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

32. After personally reviewing both the District's proposed response and the paralegal specialist's analysis, I issued a letter dated March 15, 2006 forwarding the named prosecutors' current Appointment Affidavits to the Requester, in full and without redaction, to the extent that such responsive records had been forwarded to EOUSA by the USAO. **Exhibit 12.**

33. More specifically, of the three AUSAs for which the Requester sought records from the USAO-NCW, two current Appointment Affidavits were released-in-full for AUSAs Robert J. Higdon, Jr. and Jill W. Rose. **Exhibit 12.** No redactions were made and no exemptions were asserted as to these two pages of documents.

34. As for the other AUSA for which the Requester sought records from the USAO-NCW, my March 15, 2006 letter advised the Requester that no responsive USAO records could be located because "AUSA Ashburn is no longer with the USAO-NCW, although you may be able to obtain such records directly from the Federal Records Center. . . ." *Id.*

35. By facsimile dated April 5, 2006, I received a copy of the Requester's March 22, 2006 response to EOUSA's March 15, 2006 records release. **Exhibit 5.** The Requester took issue with the lack of "letters of appointment" in the March 15th release, as more fully summarized in **¶ 20**, above.

36. To respond to Plaintiff's concerns, and in an effort to minimize the pending issues, I issued another memorandum to the District, dated April 7, 2006, requesting it to conduct a supplemental search, on an expedited basis, for any responsive "letters of appointment" – notwithstanding that the previously released Appointment Affidavits reflect both the AUSA's appointment and oath of office. **Exhibit 13.**

37. The USAO-NCW then conducted a supplemental search for "letters of authority" on or about April 10, 2006, during which the District's FOIA Contact had a Human Resources Officer conduct a manual search of District personnel files for the requested records, as reflected in FOIA Forms 036 and 041, which were forwarded to EOUSA for processing. **Exhibit 14**.

38. Upon EOUSA's receipt of the District material responsive to Plaintiff's request for "letters of authority," I personally reviewed it for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

39. I then issued a letter to the Requester, dated April 26, 2006, releasing the "letters of appointment" that had been located by the District – subject to redaction of the affected AUSAs' home addresses – pursuant to FOIA Exemption 6 and the Privacy Act, 5 U.S.C. §§ 552(b)(6) and 552a(b). **Exhibit 15**.

40. More specifically, EOUSA's April 26, 2006 supplemental release consisted of six additional pages, of which four pages were released in full, and two pages were redacted in part to protect the privacy of the home address of the affected AUSAs. The records released in full consisted of letters to the United States Attorney from Main Justice confirming the appointment of the affected AUSAs. The redacted records, in contrast, consisted of letters from Main Justice directly to two AUSA candidates' home addresses confirming a conditional appointment subject, e.g., to a successful background investigation and drug screening test.

41. As more fully discussed below, all records were the product of a reasonable search, all asserted exemptions were carefully evaluated and applied, and all redacted records were thoroughly reviewed for segregability and released to the maximum extent consistent with the applicable exemptions authorized by law. No processing fees were charged.

**REQUEST NO. 06-176 (USAO-DC)**

42. Plaintiff's October 26, 2005 request was received by EOUSA on November 8, 2005,

and designated Request No. 06-176 for search and processing purposes by the United States

Attorney's Office for the District of Columbia (USAO-DC) with respect to Plaintiff's request for

"letters of appointment and oath of office" on two prosecutors in that USAO. **Exhibit 16**.

43. After 20 working days had elapsed without a response from EOUSA, the Requester

instituted this FOIA action by complaint dated November 29, 2005 and filed December 15, 2005.

44. Shortly after receiving a copy of the Requester's complaint, I issued a memorandum

dated February 7, 2006 advising the USAO-DC of the litigation and requesting it to "[e]xpedite

[its] production of responsive documents." **Exhibit 17**.

45. In response to the request, the Lead Paralegal and FOIA Specialist in the USAO-DC

conducted a search, in conjunction with the Human Resources staff, for the identified AUSAs in

the District's personnel files, as reflected on FOIA Form Nos. 010B, 036 and 041. **Exhibit 18**.

Those forms reflect that all appropriate procedures were followed, and that the USAO conducted

a reasonable search for responsive records by means of a manual search of the District's

personnel records.

46. Upon EOUSA's receipt of records and the above-referenced forms from the USAO-

DC, a paralegal specialist in our FOIA/Privacy Staff was assigned to review the District's

proposed response to the request for compliance with the access and exemption provisions of the

Freedom of Information and Privacy Acts and related Departmental procedures.

47. After personally reviewing both the District's proposed response and the paralegal

specialist's analysis, I issued a letter dated March 15, 2006 forwarding the named prosecutors'

current Appointment Affidavits to the Requester, in full and without redaction, to the extent that such responsive records had been forwarded to EOUSA by the USAO. **Exhibit 19**.

48. More specifically, of the two AUSAs for which the Requester sought records from the USAO-DC, one current Appointment Affidavit was released-in-full for AUSA John P. Dominguez. **Exhibit 19**. No redactions were made and no exemptions were asserted as to this one-page document.

49. As for the other AUSA for which the Requester sought records from the USAO-DC, my March 15, 2006 letter advised the Requester that no responsive USAO records could be located because "AUSA O'Connor is no longer with the USAO-DC, although you may be able to obtain such records directly from the Federal Records Center. . . ." *Id.*

50. By facsimile dated April 5, 2006, I received a copy of the Requester's March 22, 2006 response to EOUSA's March 15, 2006 records release. **Exhibit 5**. The Requester took issue with the lack of "letters of appointment" in the March 15th release, as more fully summarized in ¶ **20**, above.

51. To respond to Plaintiff's concerns, and in an effort to minimize the pending issues, I issued another memorandum to the District, dated April 7, 2006, requesting it to conduct a supplemental search, on an expedited basis, for any responsive "letters of appointment" – not-withstanding that the previously released Appointment Affidavit reflects both the AUSA's appointment and oath of office. **Exhibit 20**.

52. The USAO-DC then conducted a supplemental search for "letters of authority" on or about April 10, 2006, during which the District's FOIA Contact had a Human Resources Officer conduct a manual search of District personnel files for the requested records, as reflected in an

electronic mail message dated April 10, 2006, which was forwarded to EOUSA for processing.
**Exhibit 21**.

53. Upon EOUSA's receipt of the District material responsive to Plaintiff's request for "letters of authority," I personally reviewed it for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

54. I then issued a letter to the Requester, dated April 26, 2006, releasing in full the "letter of appointment" that had been located by the District. **Exhibit 22**.

55. More specifically, EOUSA's April 26, 2006 supplemental release consisted of one additional page, which was released in full to the Requester. The record consisted of a letter to the United States Attorney from Main Justice confirming the appointment of the affected AUSA.

56. As more fully discussed below, all records were the product of a reasonable search, all asserted exemptions were carefully evaluated and applied, and all redacted records were thoroughly reviewed for segregability and released to the maximum extent consistent with the applicable exemptions authorized by law. No processing fees were charged.

### REQUEST NO. 06-177 (USAO-TNM)

57. Plaintiff's October 26, 2005 request was received by EOUSA on November 8, 2005, and designated Request No. 06-177 for search and processing purposes by the United States Attorney's Office for the Middle District of Tennessee (USAO-TNM) with respect to Plaintiff's request for "letters of appointment and oath of office" on one prosecutor in that USAO. **Exhibit 23**.

58. After 20 working days had elapsed without a response from EOUSA, the Requester instituted this FOIA action by complaint dated November 29, 2005 and filed December 15, 2005.

59. Shortly after receiving a copy of the Requester's complaint, I issued a memorandum dated February 7, 2006 advising the USAO-TNM of the litigation and requesting it to "[e]xpedite [its] production of responsive documents." **Exhibit 24**.

60. In response to the request, the Paralegal Specialist and FOIA Contact in the USAO-TNM conducted a search for the identified AUSA in the District's personnel files, as reflected on FOIA Form Nos. 010B, 036 and 041. **Exhibit 25**. Those forms reflect that all appropriate procedures were followed, and that the USAO conducted a reasonable search for responsive records by means of a manual search of the District's personnel records.

61. Upon EOUSA's receipt of records and the above-referenced forms from the USAO-TNM, a paralegal specialist in our FOIA/Privacy Staff was assigned to review the District's proposed response to the request for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

62. After personally reviewing both the District's proposed response and the paralegal specialist's analysis, I issued a letter dated March 15, 2006 forwarding the named prosecutor's current Appointment Affidavit to the Requester, in full and without redaction, to the extent that such responsive records had been forwarded to EOUSA by the USAO. **Exhibit 26**.

63. More specifically, with respect to the one AUSA for which the Requester sought records from the USAO-TNM, one current Appointment Affidavit was released-in-full for AUSA Sunny A. M. Koshy. **Exhibit 26**. No redactions were made and no exemptions were asserted as to this one-page document.

64. By facsimile dated April 5, 2006, I received a copy of the Requester's March 22, 2006 response to EOUSA's March 15, 2006 records release. **Exhibit 5**. The Requester took

issue with the lack of "letters of appointment" in the March 15th release, as more fully summarized in ¶ **20**, above.

65. To respond to Plaintiff's concerns, and in an effort to minimize the pending issues, I issued another memorandum to the District, dated April 7, 2006, requesting it to conduct a supplemental search, on an expedited basis, for any responsive "letters of appointment" – not-withstanding that the previously released Appointment Affidavit reflects both the AUSA's appointment and oath of office. **Exhibit 27**.

66. The USAO-TNM then conducted a supplemental search for "letters of authority" on or about April 13, 2006, during which the District's FOIA Contact (a Paralegal Specialist), in conjunction with the Human Resources staff, conducted a manual search of District personnel files for the requested records, as reflected in FOIA Forms 036 and 041, which were forwarded to EOUSA for processing. **Exhibit 28**.

67. Upon EOUSA's receipt of the District material responsive to Plaintiff's request for "letters of authority," I personally reviewed it for compliance with the access and exemption provisions of the Freedom of Information and Privacy Acts and related Departmental procedures.

68. I then issued a letter to the Requester, dated April 26, 2006, releasing the "letters of appointment" that had been located by the District – subject to redaction of the affected AUSAs' home addresses – pursuant to FOIA Exemption 6 and the Privacy Act, 5 U.S.C. §§ 552(b)(6) and 552a(b). **Exhibit 29**.

69. More specifically, EOUSA's April 26, 2006 supplemental release consisted of two additional pages, of which the first page was redacted in part to protect the privacy of the home address of the affected AUSA, and the second page was released in full. This two-page docu-

ment consisted of a letter from Main Justice directly to the AUSA candidate's home addresses confirming a conditional appointment subject, *e.g.*, to a successful background investigation and drug screening test.

70.  As more fully discussed below, all records were the product of a reasonable search, all asserted exemptions were carefully evaluated and applied, and all redacted records were thoroughly reviewed for segregability and released to the maximum extent consistent with the applicable exemptions authorized by law.  No processing fees were charged.

## ADEQUACY OF THE SEARCH

71.  As noted, after receiving Plaintiff's request for the "letters of appointment and oath of office" for 13 individually named current and/or former prosecutors, EOUSA split the request for search and processing purposes among the four USAOs specified in the request.

72.  Those offices were the most reasonable locations to search for responsive documents because United States Attorneys' records are generally decentralized among over 100 offices, and these were the specific USAOs identified by the Requester as being the offices of the 13 AUSAs in question.  Moreover, as the Department's FOIA regulations state, requests must be specific enough to "enable Department personnel to locate them with a reasonable amount of effort," 28 CFR § 16.3(b), and overbroad search requests can increase requesters' potential FOIA fees while unnecessarily diverting scarce governmental resources.

73.  Each USAO has a designated FOIA Contact who serves as the official liaison between that District and the FOIA/Privacy Staff in EOUSA.

74.  As reflected in FOIA Forms 010B, 036, and 041, each of the four Districts' FOIA Contacts duly coordinated with other appropriate staff members in their respective USAOs to

locate records responsive to the request for letters of appointment and oaths of office on the named AUSAs. This was accomplished by a manual search of each District's personnel records. *See* **Exhibits 3, 11, 18, and 25**; *accord* Index of Exhibits, below.

75. Following this initial search by each of the four affected Districts, EOUSA released to Plaintiff, in full and without redaction, the current Appointment Affidavits – reflecting both the appointment and oath of office of each AUSA – for those prosecutors whose records were on file in those USAOs. With respect to those AUSAs no longer employed by the four identified USAOs, the Requester was directed to the Federal Records Center, where additional records may be available through the National Archives and Records Administration. *See* **Exhibits 4, 12, 19, and 26** (March 15, 2006 initial release).

76. Upon receipt of the Requester's March 22, 2005 response to EOUSA's March 15, 2005 records release (**Exhibit 5** and **¶ 20**), which took issue with the lack of separate "letters of appointment," EOUSA directed each of the four USAOs to conduct a supplemental search. *See* **Exhibits 6, 13, 20, and 27** (EOUSA's supplemental April 7, 2006 memo to Districts).

77. The scope of the supplemental search focused on any records that could reasonably be characterized as "letters of appointment" within the meaning of the request – notwithstanding that the previously furnished Appointment Affidavits reflect both the AUSA's appointment *and* oath of office, and notwithstanding that letters containing conditional employment offers (subject, *e.g.*, to successful background investigations and drug tests) are *prima facie* not as probative of a prosecutor's authority as the SF-61 Appointment Affidavits previously furnished.

78. As a result of the supplemental search, EOUSA released to Plaintiff all documents that could be located and identified by the affected USAOs as being responsive to Plaintiff's

request for "letters of appointment," subject only to redaction of the prosecutors' home addresses under the Privacy Act and FOIA Exemption 6. With respect to those AUSAs no longer employed by the four identified USAOs, the Requester was directed to the Federal Records Center, where additional records may be available through the National Archives and Records Administration. *See* **Exhibits 8, 15, 22, and 29** (April 26, 2006 supplemental release).

79. Except for the redaction of AUSAs' home addresses, all documents were released to Plaintiff in full and at no cost.

80. No FOIA processing fees were charged because Departmental regulations state that the first 100 pages of documents, and the first two hours are search time, are to be provided to non-commercial requesters free of charge – and, furthermore, "[w]henever a total fee . . . is $14.00 or less for any request, no fee will be charged." 28 CFR § 16.11(d)(4).[3] Here, the total pages released did not exceed the 100-page threshold, and the total search time reported was 2 hours and 48 minutes, of which the first two hours are free under the regulations. *See* **Exhibits 3 and 7** (one hour of search time reported by USAO-FLS); **Exhibits 11 and 14** (13 minutes of search time reported by USAO-NCW); **Exhibits 18 and 21** (20 minutes of search time reported by USAO-DC); and **Exhibits 25 and 28** (one hour and 15 minutes of search time reported by USAO-TNM).

---

[3] *Accord* 28 CFR § 16.11(d)(3) ("Except for requesters seeking records for a commercial use," no charge is made for the first two hours of search time or the first 100 pages of copying).

## EOUSA'S DISCLOSURE DETERMINATION

81. In total, the Requester received <u>27</u> pages of responsive documents, as summarized

below, of which <u>22</u> pages were released-in-full ("RIF"), while <u>5</u> pages were released-in-part

("RIP"), <u>i.e.</u>, redacted to protect the privacy of the affected prosecutors' home addresses:

Request No. 06-174 (USAO-FLS)
RIF: 4 pages of Appointment Affidavits (**Exhibit4**)
RIF: 8 pages of "letters of appointment" (**Exhibit 8**)
*RIP*: 2 pages of "letters of appointment" (**Exhibit 8**)

Request No. 06-175 (USAO-NCW)
RIF: 2 pages of Appointment Affidavits (**Exhibit 12**)
RIF: 4 pages of "letters of appointment" (**Exhibit 15**)
*RIP*: 2 pages of "letters of appointment" (**Exhibit 15**)

Request No. 06-176 (USAO-DC)
RIF: 1 page Appointment Affidavit (**Exhibit 19**)
RIF: 1 page "letter of appointment" (**Exhibit 22**)

Request No. 06-177 (USAO-TNM)
RIF: 1 page Appointment Affidavit (**Exhibit 26**)
RIF: 1 page of "letter of appointment" (**Exhibit 29**)
*RIP*: 1 page of "letter of appointment" (**Exhibit 29**).

82. In order to justify the agency's decision to redact the home addresses of the affected

AUSAs, the following explanation is hereby proffered, under oath, to set forth the applicable

FOIA and PA exemptions applied, in accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.D.C.

1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977 (1974), and its progeny.

## JUSTIFICATION FOR REDACTION UNDER FOIA EXEMPTION 6

83. In redacting the home addresses of affected prosecutors from the "letters of

appointment" released to Plaintiff, EOUSA relied upon FOIA Exemption 6. That statutory

provision exempts from public disclosure

Page 19 of 23

> personnel and medical files and similar files the disclosure of
> which would constitute a clearly unwarranted invasion of personal
> privacy.

5 U.S.C. § 552(b)(6). This protection is afforded to information contained in agency files that
would infringe upon the personal privacy of the individual(s) about which it pertains.

84. When considering whether to invoke Exemption 6, our analysis centers around the
following question: whether public disclosure of the information "would constitute a clearly
unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The resolution of this issue
involves a balancing of the public's right to access information about governmental operations
against the personal privacy interests of individuals who happen to be identified in agency
records.

85. In this case, FOIA Exemption 6 was applied, in a very narrow fashion, only to
redact the affected prosecutors' home addresses. Clearly, the release of such highly personal
information could subject such persons – and their families – to an unwarranted invasion of
personal privacy as well as threats, harassment, retaliation, and physical danger from convicted
offenders and others involved in the criminal justice system or dissatisfied with the outcome of
cases in which an AUSA asserted governmental interests over and against their interests in the
context of our adversarial system of justice.

86. Moreover, in reaching the decision to redact AUSAs' home addresses from the
released documents, it was determined that the public interest in disclosure was heavily
outweighed by the affected individuals' privacy interest, since disclosure of individuals' home
addresses sheds absolutely no light upon government operations and activities within the
meaning of FOIA, its legislative history, and related case law.

## JUSTIFICATION FOR REDACTION UNDER THE PRIVACY ACT

87. The Privacy Act states in pertinent part: "No agency shall disclose any record . . . contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless otherwise authorized by law. 5 U.S.C. § 552a(b).

88. None of the affected AUSAs granted consent for the public disclosure of their private home addresses.

89. One exception to the Privacy Act's general prohibition against non-disclosure of third-party information without consent is set forth in 5 U.S.C. § 552a(b)(2), which authorizes disclosure under the PA, if such disclosure "would be . . . required under section 552 [*i.e.*, FOIA]." However, as noted above, after balancing the public and personal interests at stake, FOIA Exemption 6 was specifically deemed to require the redaction of the prosecutors' private home address information here. Consequently, the disclosure of such personal third-party information without their consent was deemed violative of the Privacy Act. 5 U.S.C. § 552a(b).

## SEGREGABILITY

90.     Each of the 5 redacted pages was carefully evaluated for segregability. As explained above, the only information redacted was the home address of each affected prosecutor, which was deemed exempt from disclosure pursuant to the FOIA and PA provisions discussed above.

91. The redactions were performed in such a way as to allow the requester to receive virtually all of the information on each of the 5 pages released-in-part, with only the affected

prosecutors' home addresses being redacted from the salutation of each such letter of appointment.

92.  Plaintiff was provided with all information that was not exempt from public disclosure by law and that would not violate the personal privacy of third parties.  No reasonably segregable non-exempt information was withheld from Plaintiff.

## **CONCLUSION**

93.  Each step in the handling of the request at issue in this case has been consistent with applicable Department of Justice procedures and the Freedom of Information and Privacy Acts.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on May 8, 2006.

_____
ANTHONY J. CICCONE
Senior Attorney Advisor
Freedom of Information & Privacy Staff
Executive Office for U.S. Attorneys
United States Department of Justice

## INDEX OF EXHIBITS

<u>Request No. 06-174 (USAO-FLS)</u>

1.    Plaintiff's Oct. 26, 2005 request re: USAO-FLS
2.    EOUSA's February 7, 2006 memo to District
3.    Initial search forms by District
4.    EOUSA's March 15, 2006 initial release to Plaintiff
5.    Plaintiff's March 22, 2006 supplemental correspondence
6.    EOUSA's supplemental April 7, 2006 memo to District
7.    Supplemental search forms by District
8.    EOUSA's April 26, 2006 supplemental release to Plaintiff

<u>Request No. 06-175 (USAO-NCW)</u>

9.    Plaintiff's Oct. 26, 2005 request re: USAO-NCW
10.   EOUSA's February 7, 2006 memo to District
11.   Initial search forms by District
12.   EOUSA's March 15, 2006 initial release to Plaintiff
13.   EOUSA's supplemental April 7, 2006 memo to District
14.   Supplemental search forms by District
15.   EOUSA's April 26, 2006 supplemental release to Plaintiff

<u>Request No. 06-176 (USAO-DC)</u>

16.   Plaintiff's Oct. 26, 2005 request re: USAO-DC
17.   EOUSA's February 7, 2006 memo to District
18.   Initial search forms by District
19.   EOUSA's March 15, 2006 initial release to Plaintiff
20.   EOUSA's supplemental April 7, 2006 memo to District
21.   Supplemental search forms by District
22.   EOUSA's April 26, 2006 supplemental release to Plaintiff

<u>Request No. 06-177 (USAO-TNM)</u>

23.   Plaintiff's Oct. 26, 2005 request re: USAO-TNM
24.   EOUSA's February 7, 2006 memo to District
25.   Initial search forms by District
26.   EOUSA's March 15, 2006 initial release to Plaintiff
27.   EOUSA's supplemental April 7, 2006 memo to District
28.   Supplemental search forms by District
29.   EOUSA's April 26, 2006 supplemental release to Plaintiff